# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI LILLY AND COMPANY, : <br> : <br> *Plaintiff*, : <br> : <br> v. : <br> : <br> EAGLE PHARMACEUTICALS, INC., : <br> : <br> *Defendant.* : | Civ. No. 17-1293- MSG |

## MEMORANDUM

**M. GOLDBERG, J.**                                                 **March 21, 2019**

      Currently pending is the claim construction for U.S. Patent No. 7,772,209 ("the '209") as submitted by Plaintiff Eli Lilly and Company ("Lilly") and Defendant Eagle Pharmaceuticals, Inc. ("Eagle"). (D.I. 53; D.I. 60; D.I. 63; D.I. 81; D.I. 85). The '209 patent covers a method of administering pemetrexed disodium after pretreating patients with folic acid and vitamin B12. I held a *Markman* Hearing on January 23, 2019. (D.I. 91).

## I.    APPLICABLE PRECEDENT

      "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). The proper construction of a patent claim is a question of law. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837 (2015). As a general rule, claim terms are given their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the

1

invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). There are only two exceptions to the general rule: (i) when the patentee acts as its own lexicographer and sets out a definition; or (ii) the patentee has disavowed the full scope of the claim term either in the specification or during prosecution. *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016).

To determine the ordinary and customary meaning, courts look first and foremost to the intrinsic evidence, which is the claim language, the specification, and the prosecution history. *Leseman, LLC v. Stratasys, Inc.*, 730 F. App'x 912, 914 (Fed. Cir. 2018). Where necessary, courts may also look to the extrinsic evidence, which includes "expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)). Extrinsic evidence may not be used "for the purpose of varying or contradicting the terms of the claims." *Markman*, 52 F.3d at 981. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

## II. CONSTRUCTION OF DISPUTED TERMS

The parties initially submitted two terms for construction that are no longer disputed. In its responsive brief, Eagle agreed to not dispute Lilly's proposed construction of the claim term "Vitamin B12." (D.I. 81 at 19). Therefore, in the attached order, I adopt the parties' agreed-upon construction for "Vitamin B12." At the *Markman* hearing, the parties also agreed that I did not need to construe the claim term "methylmalonic acid lowering agent." (D.I. 91 at 80:1-6).

The following is my ruling on the terms that remain in dispute.

2

**A.** "administration of pemetrexed disodium" / "administering pemetrexed disodium" / "administering" / "is administered" / "administration" / "pemetrexed disodium" / "the pemetrexed disodium"

| Claim Term | Lilly | Eagle | Court's Construction |
|---|---|---|---|
| "administration of pemetrexed disodium"<br><br>"administering pemetrexed disodium" | "a liquid administration of pemetrexed disodium (*i.e.* a solution containing at least two sodium ions for each pemetrexed ion)" | Construe separate terms below[1] | Construe separate phrases below |
| "administering"<br><br>"is administered"<br><br>"administration" | Construe combined phrase above[2] | "giving remedially, giving treatment, dispensing, meting out"<br><br>"is given remedially, is given treatment, is dispensed, is meted out"<br><br>"the act of giving remedially, giving treatment, dispensing, meting out" | "giving remedially, giving treatment, dispensing, meting out"<br><br>"is given remedially, is given treatment, is dispensed, is meted out"<br><br>"the act of giving remedially, giving treatment, dispensing, meting out" |
| "pemetrexed disodium"<br><br>"the pemetrexed disodium" | Construe combined phrase above[3] | "the chemical compound pemetrexed disodium" | "the chemical compound pemetrexed disodium" |

---

[1] If a construction is required, Eagle proposes "the act of giving remedially, giving treatment, dispensing or meting out the chemical compound pemetrexed disodium." (D.I. 53, Ex. 1 at 2).

[2] If a construction is required, Lilly proposes "prescribing that results in a patient receiving, directing that results in a patient receiving, or writing orders that results in a patient receiving, or putting on or in a patient's body." (*Id.* at 3-4)

[3] If a construction is required, Lilly proposes "pemetrexed and two sodiums." (*Id.* at 5-6)

3

As an initial matter, I must decide whether to construe the combined phrase "administration of pemetrexed disodium" (and its variants) or the separate terms "administration" and "pemetrexed disodium" (and their variants). For several reasons, I will construe the separate terms instead of the combined phrase.

First, the specification demonstrates that "pemetrexed disodium" is capable of being defined and understood as a standalone term as the specification expressly defines "antifolate" as a standalone term, and pemetrexed disodium is the preferred example of an "antifolate." (*See* D.I. 53-1, Ex. 2 at 4:28-43).

Second, Lilly is correct that every time the term "pemetrexed disodium" appears in the '209 patent it is used in conjunction with the terms "administering" or "administration of." (D.I. 91 at 23:12-15). But the '209 patent also uses "administering" and "administration of" in conjunction with many other compounds and drugs that are not "pemetrexed disodium" including "antifolates," "methylmalonic acid lowering agent," "folic acid," "FBP binding agent," and "Vitamin B12." (D.I. 53-1, Ex. 2 at 1:55-61; 2:32-67; 3:1-18; 3:53-58; 4:25-43; 5:5-50; 6:13-52). "It is well-established … that claim terms are to be construed consistently throughout a patent." *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1359 (Fed. Cir. 2017). Lilly's approach to claim construction could create an inconsistency. Specifically, Lilly proposes that "administration of pemetrexed disodium" mean "liquid administration of pemetrexed disodium," which suggests that other compounds and drugs mentioned in connection with "administration" must also be

administered via a liquid.[4]  But the specification makes clear this is not the case.  (*See* Section II.A.2. below).  Any inconsistency could be easily avoided by construing the separate terms.

Finally, there is no reason to construe the full phrase "administration of pemetrexed disodium" when I will be required to construe the standalone term "pemetrexed disodium" in any event.  The term "pemetrexed disodium" also appears in the disputed phrase "effective amount of pemetrexed disodium."  The patent specification provides a standalone definition for "effective amount."  If I adopt the patent's standalone definition of "effective amount," then I will still need to construe "pemetrexed disodium" as a standalone term so that the parties have a complete definition for the disputed phase "effective amount of pemetrexed disodium."  Given all of the above, I do not see any utility in construing the longer phrase "administration of pemetrexed disodium" (and its permutations).[5]  Accordingly, the next section will set out my construction of the separate phrases.

---

[4]  For this reason, if I were to construe "administration of pemetrexed disodium," Eagle asks that I also construe "administering an effective amount of folic acid and an effective amount of a methylmalonic acid lowering agent," "administration of between about 350 μg and about 1000 μg of folic acid," and "administration of about 500 μg to about 1500 μg of Vitamin B12."  (D.I. 53-1, Ex. 1 at 7-8; D.I. 60 at 18-19).

[5]  I am aware of other courts that have had to resolve a dispute over the '209 patent by construing the full phrase "administration of pemetrexed disodium."  In *Eli Lilly & Co. v. Dr. Reddy's Laboratories, Ltd.*, an Indiana district court determined that the phrase "refer[s] to a liquid administration of pemetrexed disodium." 2017 WL 6387316, at *4 (S.D. Ind. Dec. 14, 2017).  Notably, the Indiana court declined to adopt the rest of the construction Lilly proposes here, i.e. "a solution containing at least two sodium ions for each pemetrexed ions." *Id.*  Ultimately, nothing herein necessarily contradicts the constructions reached by the Indiana court.

### 1. "pemetrexed disodium" / "the pemetrexed disodium"[6]

Regarding the term "pemetrexed disodium," Eagle asks that it be construed to mean "the chemical compound pemetrexed disodium." (D.I. 53-1, Ex. 1 at 5). This proposed construction is supported by the intrinsic evidence. The '209 patent expressly defines "antifolate" as "a chemical compound" and states that "pemetrexed disodium" is a preferred example of an antifolate, which means pemetrexed disodium is a preferred example of a certain chemical compound. (*Id.*, Ex. 2 at 4:28-43). In the prosecution history, Lilly expressly referred to "pemetrexed disodium" as a compound several times. In remarks to a May 2005 amendment, Lilly states: "[T]he name of Eli Lilly and Co.'s compound, Alimta®, has been corrected in the specification to the accurate spelling 'Pemetrexed Disodium.' The compound was appropriately named and referenced at least page 2, lines 6-7." (*Id.*, Ex. 3 at 6). And in remarks to a July 2007 amendment, Lilly states: "The Specification has also been amended to correct an obvious error in the name of the compound 'Alimta,'…. The name has been corrected to read 'pemetrexed disodium.'" (*Id.*, Ex. 7 at 6).

Lilly disagrees and responds that if the term "pemetrexed disodium" is construed by itself, it should mean "pemetrexed and two sodiums." (*Id.*, Ex. 1 at 5-6). In contrast to how Eagle arrived at its proposed construction, Lilly does not cite to any express discussion in the intrinsic evidence of pemetrexed disodium as "pemetrexed and two sodiums." Instead, Lilly points to the fact that: (i) pemetrexed disodium is traditionally administered as an intravenous injection; (ii) the patent specification discusses clinical trials in which the pemetrexed disodium was administered by injection; and (iii) the label for Alimta states that it is administered as an "intravenous infusion."

---

[6] These terms appear in claims 1, 5-7, 12, and 19-21. (D.I. 53-1, Ex. 1 at 10:56-12:29).

(D.I. 85 at 4; D.I. 53-1, Ex. 2 at 7:1-3, 8:46-48; *Id*., Ex. 11 at 2). According to Lilly's expert, Dr. Bruce A. Chabner, M.D., a person of reasonable skill in the art (a "POSA") would understand that to administer pemetrexed disodium as an intravenous injection, the pemetrexed disodium would have to be dissolved (or reconstituted) in a liquid solution. (D.I. 65 at ¶ 34). Dr. Chabner further explains, "[w]hen pemetrexed disodium is dissolved in solution, the pemetrexed and sodium ions dissociate from each other." (*Id*. at ¶ 43). Therefore, Lilly argues, any definition of pemetrexed disodium must capture this scientific understanding by not requiring the pemetrexed and sodium ions to be bonded together in a solid form. (*Id*.). As such, Lilly suggests that the definition "chemical compound" necessarily means the elements are bonded together. (*Id*. at ¶ 46).

Lilly's argument is unpersuasive because, as discussed below, a proper construction of the term "administration" would cover administration of a compound or drug by an injection. Thus, the term "administration" when read together with term "pemetrexed disodium" would not exclude the intravenous infusion of pemetrexed disodium dissolved in a solution, as Lilly contends. (*See*, *e.g*., D.I. 63 at 6). In addition, Lilly's proposed construction suggests that the pemetrexed and two sodium ions need not have any relationship with each other, meaning that the pemetrexed and sodium ions can come from completely different sources. Lilly may be correct that "the pemetrexed and sodium ions found in a solution formed by dissolving solid pemetrexed disodium are identical to the pemetrexed and sodium ions found in a solution made some other way, including, for example, taking a liquid formulation of pemetrexed and mixing it with saline." (*Id*.). But that is an argument for infringement under the doctrine of equivalents, not claim construction.

Ultimately, in those cases where the intrinsic evidence "unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996). Because Eagle's proposed construction

rests entirely on intrinsic evidence and Lilly's proposed construction relies on extrinsic evidence, I will adopt Eagle's proposed construction. "Pemetrexed disodium" means "the chemical compound pemetrexed disodium."

### 2. "administering" / "is administered" / "administration"[7]

The specification uses the term "administration" and its permutations numerous times in in combination with many different compounds. For some compounds, the specification describes different routes of administration, and when a particular route is preferred, the specification will expressly state that route. For example, the specification states in a background section that the FPB binding agent, which includes folic acid, "generally will be provided in the form of a vitamin supplement, namely as a tablet administered orally," and further states in an example that "[f]olic acid … should be taken orally." (D.I. 53-1, Ex. 2 at 5:51-52, 6:13-18, 9:24-25). Indeed, dependent claims 8 and 16, expressly claim folic acid in specific amounts where the "folic acid is administered orally." (*Id*. at 11:17-19, 12:12-13). Vitamin B12 is given a similar treatment. *See Id*. at 5:5-15 (stating that Vitamin B12 "generally will be provided in the form of a vitamin supplement, namely as a tablet administered orally"); *id*. at 9:19-20 (preferring a contrary route, i.e., that "Vitamin B12 will be obtained and administered as … [an] intramuscular injection"); *id*. at 11:1-5, 12:7-11 (claiming vitamin B12 in specific amounts where the "vitamin B12 is administered as an intramuscular injection")).

---

[7] The term "administering" appears in claims 1 and 12. The term "is administered" appears in claims 3-4, 6-10, and 14-20. The term "administration" appears in claims 5-7, 11-13, and 19-21. The term "pemetrexed disodium" appears in claims 1, 5-7, 12, and 19-21. (D.I. 53-1, Ex. 1 at 10:56-12:29).

8

But, the specification treats pemetrexed disodium differently. It does not describe how pemetrexed disodium is usually administered, nor does it expressly state a preference for a certain route of administration, or claim a particular route of administration. "[U]nless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Texas Digital Sys., Inc. v. Telegenix, Inc*., 308 F.3d 1193, 1202 (Fed. Cir. 2002).

General purpose dictionaries can be helpful in determining the widely accepted meaning of commonly understood words. *Phillips*, 415 F.3d at 1314. "Administer" is defined in the dictionary as "to mete out," "dispense," or "to give remedially." Merriam-Webster's Collegiate Dictionary (Tenth Edition, 1999) (D.I. 61-1, Ex. A); Webster's II New Riverside Dictionary (Revised Edition, 1996) (*Id*., Ex. B.). Accordingly, I will adopt Eagle's proposed construction for "administration" and its variants, which is: "the act of giving remedially, giving treatment, dispensing, meting out."

Lilly argues that adoption of this construction would exclude the patent's preferred embodiment of pemetrexed disodium, which is Alimta, and Alimta is administered as an intravenous injection. I disagree because there is nothing in the words "to mete out," "dispense," or "to give remedially" that excludes this method of administration. Indeed, Eagle itself acknowledges that its proposed construction of administration would cover Alimta. (*See* D.I. 81 at 11-13; D.I. 91 at 60:11-63:15). As Eagle explains, "'administering pemetrexed disodium,' in the case of an injectable drug, includes the steps of carrying out the treatment, which also includes dissolving the compound in an appropriate solvent and then injecting the drug into the patient, thereby treating the patient with pemetrexed disodium, the active ingredient in Alimta." (D.I. 81

9

at 11). Therefore, under the claim construction adopted herein, administration of Alimta falls within the scope of the claims of the '209 patent.

> **B. "an effective amount of pemetrexed disodium" / "an effective amount of folic acid and an effective amount of a methylmalonic acid lowering agent" / "effective amount"[8]**

| Claim Term | Lilly | Eagle | Court's Construction |
|---|---|---|---|
| "an effective amount of pemetrexed disodium" | "an amount of pemetrexed disodium that is capable of providing a therapeutic benefit to the patient in need thereof" | Construe shortened phrase below.[9] | Construe shortened phrase below |
| "an effective amount of folic acid and an effective amount of a methylmalonic acid lowering agent" | "amounts of folic acid and a methylmalonic acid lowering agent that are capable of reducing the prevalence or severity of one or more toxicities associated with the administration of pemetrexed disodium" | Construe shortened phrase below.[10] | Construe shortened phrase below |
| "effective amount" | Construe longer phrase above | "an amount of a compound or drug, which is capable of performing the intended result. For example, an effective amount of an antifolate drug that is administered in an effort to reduce tumor growth is that amount which is required to reduce tumor growth" | "an amount of a compound or drug, which is capable of performing the intended result." |

---

[8] All of these terms appear only in claim 1 of the '209 patent. (D.I. 53-1, Ex. 2 at 10:56-65).

[9] If a construction is required, Eagle proposes: "an amount of the chemical compound pemetrexed disodium, which is capable of performing the intended result. For example, an effective amount of pemetrexed disodium that is administered in an effort to reduce tumor growth is that amount which is required to reduce tumor growth." (*Id.*, Ex. 1 at 1).

[10] If a construction is required, Eagle proposes: "amounts of folic acid and a methylmalonic acid lowering agent that reduces the toxicity associated with the administration of the antifolate drug pemetrexed disodium." (*Id.*).

10

As a threshold matter, the parties dispute whether I should construe the shortened phrase "effective amount" or longer phrases that combine "effective amount" with a particular compound or drug, such as pemetrexed disodium, folic acid, and a methylmalonic acid lowering agent. (D.I. 53-1, Ex. 1 at 1, 6; D.I. 60 at 17). I do not see the benefit in construing the longer phrases because the '209 patent itself expressly provides a definition for the standalone phrase "effective amount." (D.I. 53-1, Ex. 2 at 3:53-55). The '209 patent defines effective amount as "an amount of a compound or drug, which is capable of performing the intended result." (*Id*.). "When a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009). Accordingly, I will adopt the definition of the phrase "effective amount" as provided in the specification.

After defining the term "effective amount," the specification provides an example using antifolates. Specifically, it states: "For example, an effective amount of an antifolate drug that is administered in an effort to reduce tumor growth is that amount which is required to reduce tumor growth," (hereinafter, the "antifolate example"). (D.I. 53-1, Ex. 2 at 3:55-58). Unlike Eagle, I do not read the antifolate example as an extension of the definition itself. Rather, it is one example, out of many possible examples, demonstrating how the definition "effective amount" can operate.

In several other places where the specification uses the transition phrase "for example," that example is not intended to limit or alter the meaning of the preceding sentence. To illustrate, the specification states: "In some cases, a supportive intervention is routinely used to permit safe, maximal dosing. For example, steroids, such as dexamethone, can be used to prevent the formation of skin rashes caused by the antifolate." (*Id*. at 1:4-18). The "for example" used in the second sentence is not intended to suggest that steroids is the only supportive intervention that may be used or that steroids is only used to prevent skin rashes. Accordingly, I will exclude the antifolate

11

example given in connection with the definition of "effective amount" because it is not definitional but only exemplary. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012) (affirming district court decision to construe the examples given after an "i.e." as exemplary and not definitional).

According to Lilly, including the antifolate example in the definition of "effective amount," as Eagle has done, "inappropriately limit[s] the intended result of administering pemetrexed disodium to 'reduc[ing] tumor growth' and 'require[s]' that such reduction actually occur." (*Id*.). Eagle responds that "[t]his is incorrect." (D.I. 81 at 17). According to Eagle, the antifolate example "does not limit the intended result of the particular drug being administered," but it does make clear that the intended result must actually be achieved. (*Id*. at 17-18). This sets up a dispute between the parties as to whether the antifolate example means that, under the definition of "effective amount," the intended results must actually occur.

It is unlikely that the correct construction of "effective amount" would require the intended result to actually occur. It would lead to an absurd situation where a finding of infringement or non-infringement depends on success or failure in treating the patient. Instead, the specification suggests a different meaning. The specification teaches that the amount of any drug or compound "actually administered will be determined by a physician, in the light of the relevant circumstances." (D.I. 53-1, Ex. 2 at 6:41-44). The specification identifies several factors that are considered a part of the relevant circumstances. (*See Id*. at 6:44-47 (identifying "the condition to be treated, the chosen route of administration, the actual agent administered, the age, weight, and response of the individual patient, and the severity of the patient's symptoms")). Accordingly, I read the example as stating that an effective amount of an antifolate drug is that amount typically

12

required, under all relevant circumstances as determined by a person of ordinary skill in the art, to reduce tumor growth.

### C. "a patient in need of chemotherapeutic treatment"[11]

| Lilly |
|---|
| plain and ordinary meaning |
| **Eagle** |
| "a patient in need of chemotherapeutic treatment, i.e., receiving effective amounts of the compounds or drugs for chemotherapy" |
| **Court** |
| plain and ordinary meaning |

Eagle asks the court to construe the phrase "a patient in need of chemotherapeutic treatment" as a patient "receiving effective amounts of the compounds or drugs for chemotherapy." (D.I. 53-1, Ex. 1 at 7). According to Eagle, its proposed construction is proper because whenever the specification refers to a subject "in need of" treatment, the specification states that the subject receives an effective amounts of the drugs. (D.I. 60 at 20). Eagle points to a part of the specification stating that the invention is drawn to "[a] method of administering an antifolate to a *mammal in need thereof*, comprising administering an *effective amount* of said antifolate in combination with a methylmalonic acid lowering agent." (*Id.* (emphasis in original) (quoting D.I. 53-1, Ex. 2 at 2:55-58, 3:1-6)). Eagle misreads the above sentence. The comprising clause describing the administration of an effective amount of drugs modifies the noun "method" not the noun "mammal in need thereof." Accordingly, the court will not adopt Eagle's proposed construction which grafts on an additional requirement that the patient receive an effective amount

---

[11] This term appears in claim 12. (D.I. 53-1, Ex. 1 at 11:27).

of chemotherapeutic drugs. A patient "in need of chemotherapeutic treatment" just has to be a patient who needs chemotherapy. Accordingly, this phrase is given its plain and ordinary meaning.

## III. CONCLUSION

The court will construe the disputed terms as explained above. An appropriate Order follows.